CLARICE FOGARTY, ADMINISTRATRIX (ESTATE OF JAMES FOGARTY) *v.* M. J. BEUCHLER & SON, INC.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued April 8th—decided May 5th, 1938.

*Raymond E. Baldwin,* for the appellant (defendant).

*William Dorkin,* with whom was *George N. Foster,* for the appellee (plaintiff).

MALTBIE, C. J.   The plaintiff brought this action as administratrix on the estate of her little son.   He died as a result of being burned by hot water which escaped by reason of the breaking of a pipe leading to the bathtub in an apartment occupied by the family, in a tenement house owned by the defendant.   There is little conflict in the testimony material to the issues presented upon the appeal.   The father of the little boy was janitor of the tenement house.   On Saturday night he moved from an apartment he had occupied to that where the accident occurred.   The next morning the plaintiff found that the water was shut off from the bathtub.   When her husband turned it on, a leak appeared in the cold water pipe in a joint close to the tub.   He secured a wrench and, according to his testimony, when he was engaged in tightening the joint, the handle of the wrench struck the hot water pipe near the tub a light blow.   That pipe broke at a point some three or four feet away, where it screwed into a shut-off close to the wall of the bathroom.   The hot water, forced by pressure through the break, struck the little boy and caused the burns from which he died.

The defendant has appealed from the refusal of the trial court to set aside a verdict rendered for the plaintiff.   Assuming that the pipe was so within the control of the defendant that it owed to the deceased the duty to keep it in repair, the measure of that duty at common law would be to use reasonable care to see that the pipe was in a reasonably safe condition; and a failure in that duty would only arise if it knew or ought to have known that the pipe might break. *Reynolds* v. *Land Mortgage & Title Co.*, 114 Conn. 447, 451, 159 Atl. 282; *White* v. *DeVito Realty Co.*, 120 Conn. 331, 335, 180 Atl. 461; *Drible* v. *Village Improvement Co.*, 123 Conn. 20, 23, 192 Atl. 309.   The

statute provides that "each building used as a tenement, lodging or boarding house and all parts thereof shall be kept in good repair." General Statutes, § 2563. By this provision the Legislature could not have intended to make the owner of such a tenement house liable for injury due to defects in portions of the building which it was his duty to repair, unless he knew of them or ought to have discovered them by reasonable inspection. *Annis* v. *Britton*, 232 Mich. 291, 294, 205 N. W. 128; and see *Iudica* v. *DeNezzo*, 115 Conn. 233, 238, 161 Atl. 81; *McNulty* v. *Sherman Realty Corp.*, 123 Conn. 335, 194 Atl. 726. In *Altz* v. *Leiberson*, 233 N. Y. 16, 18, 143 N. E. 703, a statute quite similar to our own was so construed and while we have declined to follow that decision in its application of the statute to conditions in a tenement over which the landlord retained no control, we agree with its conclusion in the respect we are now considering. There was no evidence that the defendant knew of the defect in the pipe which caused the break. In this situation, either under the common law or the statute, the first question presented in considering the question of the denial of the motion to set the verdict aside is, could the jury have reasonably concluded that the defendant would by reasonable inspection have discovered the defect which caused the water to escape.

The plaintiff necessarily relies upon the fact that the pipe which broke was defective. She offers no explanation of that defect, except some testimony that the building had settled and that this was likely to put a strain upon the water pipes. She offered no testimony that any pipes in the building had been broken because of this fact or any evidence of any settling of the building which in any way affected the particular pipe which broke. The defendant offered expert testimony that the breaking of the pipe was

due to a process of dezincification, by which the zinc
in brass pipes is destroyed and which progresses from
the inside of the pipe toward its outer surface, and
that it would have been reasonably discoverable only
by an expert or by a plumber who had had experience
with a similar condition and who would anticipate its
possible presence because other brass pipes in the
building had leaked at the joints. The plaintiff offered
general testimony that the plumbing in the building
was in bad condition and frequent repairs had been
necessary. The cold water pipes throughout the build-
ing were for the most part made of lead, while the
hot water pipes were of brass; and there was no evi-
dence, except in two instances, that repairs had been
made to the latter, and nothing to indicate that in
these instances the defects produced leaking at the
joints.

In order to establish liability upon the defendant it
would not be enough to show that it had or ought to
have had knowledge that the plumbing in the build-
ing was generally in a bad condition, although such
knowledge might have been relevant upon the amount
of care it was bound to use in inspecting the plumbing
for particular defects; the burden was on the plaintiff
to prove that the defendant knew or ought to have
known of the particular defect which caused the acci-
dent and taken steps to prevent the breaking of the
pipe at that particular place. *Drible* v. *Village Im-
provement Co.*, supra; *Jainchill* v. *Schwartz*, 116 Conn.
522, 525, 165 Atl. 689. The nature of the break was
such that, so far as anything in the record shows, the
defect would not have been reasonably discoverable
had the pipe been examined the moment before it
broke. There was no evidence from which the jury
could reasonably have found that by reasonable in-
spection the defendant would have learned of the de-

fect. *Wenisch* v. *Wetherall,* 109 Conn. 735, 146 Atl.
612. Unless the plaintiff can establish a right to re-
cover by reason of the application of the doctrine of
res ipsa loquitur the trial court erred in refusing to
set the verdict aside.

We have declined to take a technical view of that
doctrine. All the tenant would ordinarily do with ref-
erence to the water pipe in his apartment in such a
situation as the one before us would be to turn the
water on or off at the faucet. On the other hand, the
defendant might have completely shut the water off
from the apartment had there been reason to do so, and
there was testimony that there was a shut-off for the
water supply for the bathroom in the hall outside it.
The turning on or off of the water by the members
of the family of the tenant had no more significance
as regards the maintenance of the pipes in proper re-
pair than the acts of the plaintiff in lighting the fuse
which we considered in *Jump* v. *Ensign-Bickford Co.,*
117 Conn. 110, 121, 167 Atl. 90. The doctrine no
doubt might have applied in this case.

In recent decisions we have carefully considered the
doctrine and have pointed out that it does not compel
an inference of negligence even where applicable but
merely permits the trier to infer it. "When the case
goes to the jury, the doctrine as such has no further
application, but the facts upon which that application
depends remain in the case to be considered alone or
with other proven facts as the basis for an inference
of negligence." *Motiejaitis* v. *Johnson,* 117 Conn. 631,
635, 169 Atl. 606; *Fallo* v. *New York, N. H. & H. R.
Co.,* 123 Conn. 81, 86, 183 Atl. 2. The doctrine is a
specific application of the general principle that negli-
gence can be proved by circumstantial evidence. *Ryan*
v. *Lilley Co.,* 121 Conn. 26, 30, 183 Atl. 2. Where the
circumstances surrounding the defect which caused the

injury are given in evidence they are to be considered in connection with those which are involved in the application of the doctrine itself and the conclusion is to be reached upon a consideration of all the circumstances disclosed in the evidence. That being so, the question whether, in a case where it may be involved, the jury could reasonably reach the conclusion that the defendant was negligent is open to inquiry in this court. In the situation here presented the jury could not reasonably have found that the settling of the building caused the break in the pipe. If they found it was due to the dezincification of the pipe they could not reasonably have found that the defendant ought to have discovered its condition by reasonable inspection. If they did not find the break to be due to either cause, upon the facts before them, including those necessary for the application of the doctrine, they could not reasonably have found a breach of duty on the defendant's part. The court erred in not setting the verdict aside.

This renders it unnecessary to consider other errors claimed by the defendant except generally and so far as may be of assistance on another trial if one is had. We could not hold as matter of law that the blow given to the hot water pipe could not have been the cause of the breaking of the pipe. Ordinarily, where there is no agreement to repair, the landlord is not liable for defective conditions within a tenement he has rented; but if he retains control of any part of the building, with that control goes the duty to take reasonable care to keep that portion reasonably safe. Liability in such cases does not depend primarily upon the portion of the building in which the defective condition occurs but on the fact that the owner has retained control. *Brandt* v. *Rakauskas*, 112 Conn. 69, 72, 151 Atl. 315; *Killian* v. *Logan*, 115 Conn. 437, 440, 162 Atl.

30; *Ziulowski* v. *Kolodziej*, 119 Conn. 230, 232, 175 Atl. 780; *Perkel* v. *Grayson*, 119 Conn. 465, 469, 177 Atl. 534. There was evidence in the case from which the jury could reasonably have found that, as far as concerns keeping the plumbing in the building in a reasonably safe condition the defendant had retained control of it, not only in the portions of the building in common use by the tenants but, with their acquiescence, in the various tenements which were rented. If they so found, the defendant would be obligated to use reasonable care to keep the plumbing in a reasonably safe condition and would be bound with such knowledge of defective conditions as it had or ought to have acquired by a reasonable inspection. *Wardman* v. *Hanlon*, 280 Fed. 988, 991; *Tallman* v. *Murphy*, 120 N. Y. 345, 352, 24 N. E. 716; *Iowa Apartment House Co.* v. *Herschel*, 36 App. Cas. D. C. 457, 465; *Richmond* v. *Standard Elkhorn Coal Co.*, 222 Ky. 150, 300 S. W. 359; *Kecoughtan Lodge No. 29 K. of P.* v. *Steiner and Kaufman*, 106 Va. 589, 592, 56 S. E. 569; *Levine* v. *Baldwin*, 84 N. Y. Sup. 92, 94; 1 Tiffany, Landlord & Tenant, § 91. Evidence of a generally defective condition of the plumbing might be relevant to the measure of care required of the defendant in inspection, and admissible for that purpose; but evidence of the character of the repairs which had been made to the plumbing where it had been found defective, except as to any repairs made to leaking joints of the brass piping, would be inadmissible.

There is error and the case is remanded with direction to grant the motion to set the verdict aside.

In this opinion the other judges concurred.