[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 14225
FACTS
This is an action in medical malpractice brought by the plaintiff, Jennifer Scace, administratrix of the estate of Holly Scace (Scace), against Hartford Hospital (Hospital) and doctors Neil H. Olson (Olson), Mark Iantosca (Iantosca), and Harry Weiser (Weiser).
According to the revised ten count complaint filed with the court on June 6, 1995, the facts are as follows. On June 19, 1993, Scace was a patient at Hartford Hospital. As part of her treatment and care, Olson prescribed 12,000,000 units of penicillin. The complaint alleges that Olson expected and intended the antibiotic to be administered over a 24 hour period in four doses of 3,000,000 units each. Upon receiving Olson's order, however, Iantosca administered the 12,000,000 units in one dose. Thus, Scace allegedly received an overdose of penicillin and suffered "adverse physical effects including seizures, aspiration, respiratory failure, various treatments in response to such signs, symptoms or conditions, inter-cranial bleeding, diminished consciousness and death." (Plaintiff's complaint, count 1, paragraph 8.). While trying to determine the cause of her symptoms, Iantosca and Weiser allegedly improperly manipulated a shunt apparatus placed in Scace's body to alleviate cranial pressure. The complaint alleges that part of the apparatus tore loose and caused bleeding in and around Scace's brain.
The first, second, and third counts allege that Iantosca, Olson, and Weiser were negligent in their treatment and care of Scace. The fourth, fifth, and sixth count allege that Iantosca, Olson, and Weiser were the agents, servants, and employees of Hartford Hospital respectively. The seventh count alleges that the Hospital is vicariously liable for the negligent acts of its agents, servants, and employees.
The eighth, ninth, and tenth counts attempt to state a cause of action against the Hospital, Iantosca, and Olson respectively, based on the doctrine of res ipsa loquitur. These counts basically allege that "in the ordinary course of administrating penicillin such an overdose would not occur except through the negligent act of the party responsible for administrating the same." (Eighth count, paragraph 11). The CT Page 14226 language in these counts further allege that antibiotic was administered under the sole and exclusive control of the hospital's agents, and that the injuries suffered "occurred without any voluntary act on the part of Holly Scace." (Eighth count, paragraph 12).
By a motion dated June 16, 1995, and filed with the court on June 19, 1995, the Hospital and Iantosca moved to strike the eighth, ninth, and tenth count of the complaint for failure to state a cause of action for which relief can be granted. On August 8, 1995, Olson also filed a motion to strike count ten of the complaint based on similar grounds.[1]
The plaintiff opposes the defendant's motion to strike. All parties have filed briefs in support of their respective positions.
DISCUSSION
Under section 152 of the Practice Book, a motion to strike is proper and permissible "[w]henever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted. . . ." Practice Book § 152(1). In pleading a case, "[i]t is incumbent on a plaintiff to allege some recognizable cause of action in his complaint." Weiss v. Wiederlight, 208 Conn. 525, 535 n. 5,546 A.2d 216 (1988) quoting Stavnezer v. Sage-Allen, 146 Conn. 460,461, 152 A.2d 312 (1959). If the pleader fails to do so, "[a] motion to strike is properly granted where a . . . complaint alleges legal conclusions unsupported by facts." Mora v. Aetna Life Casualty Ins. Co., 13 Conn. App. 208, 211, 535 A.2d 390
(1988).
When ruling on a motion to strike, "[a] trial court must take the facts to be those alleged in the complaint."Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990). "The court must construe the facts in the complaint most favorably to the [pleader]'". . ." (Citations omitted.) Novametrix Medical Systems, Inc., v. BOC Group,Inc. 224 Conn. 210, 215, 618 A.2d 25 (1992). "This includes the facts necessarily implied and fairly provable under the allegations. . . ." Westport Bank Trust Co., v. Corcoran,Mallin Aresco, 221 Conn. 490, 49, 605 A.2d 862 (1992).
"[T]he doctrine of res ipsa loquitur is a rule of common CT Page 14227 sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred . . . ." Stebel v.Connecticut Co., 90 Conn. 24, 26, 96 A. 171 (1915). In order to plead a cause of action in res ipsa loquitur, a plaintiff must allege that "(1) [t]he situation, condition, or apparatus causing the injury must be such that in the ordinary course of events no injury would result unless from a careless construction, inspection or user. (2) [b]oth inspection and user must have been at the time of the injury in the control of the party charged with neglect. (3) [t]he injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured." Schurgastv. Schumann, 156 Conn. 471, 479, 242 A.2d 471 (1968).
Because plaintiffs are required to show a breach of the duty of care through expert testimony in most medical malpractice cases, the defendants claim that the doctrine ofres ipsa loquitur is inapplicable. According to the defendants, the general standard of medical care or service required in any given situation is not commonly known by a jury. As the comment (d) of section 328D of the Restatement (Second) of Torts states, "[i]n the usual case the basis of past experience from which [the] conclusion [that the event is of a kind which ordinarily does not occur in the absence of negligence] may be drawn is common to the community, and is a matter of general knowledge, which the court recognizes on much the same basis as when it takes judicial notice of facts which everyone knows."
The plaintiff counters, however, that the cases relied on by the defendant do not state that res ipsa loquitur can never be relied upon in a medical malpractice cases, but merely stand for the proposition that a breach of the standard of medical care needs to be established through expert testimony. According to the plaintiff's interpretation of the law, an expert witness may testify at trial in medical malpractice cases, thus broadening the scope of the jury's common knowledge, in order that they may infer negligence. In support of its position, Scace relies on cases from other jurisdictions and the comment (d) to the Restatement (Second) of Torts which states: CT Page 14228
 [general knowledge] may . . . be supplied by the evidence of the parties; and expert testimony that such an event usually does not occur without negligence may afford a sufficient basis for the inference. Such testimony may be essential to the plaintiff's case where, as for example in some actions for medical malpractice, there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion. On the other hand there are other kinds of medical malpractice, as where a sponge is left in the plaintiff's abdomen after an operation, where no expert is needed to tell the jury that such events do not usually occur in the absence of negligence.
(Emphasis added.)
The defendants rely on the cases of Chubb v. Holmes, 111 Conn. 482,150 A.2d 516 (1930) and Krause v. Bridgeport Hospital169 Conn. 1, 362 A.2d 802 (1975), for the proposition that the doctrine of res ipsa loquitur is not applicable in cases of medical malpractice. A close reading of these cases demonstrate, however, the doctrine was held not to apply because the plaintiff in each case failed to present expert evidence as to the proper standard of care required in the medical procedure at issue. Rather than holding that the doctrine of res ipsa loquitur is outright inapplicable in medical malpractice cases, the Connecticut Supreme Court merely found that the respective plaintiffs could not rely on the doctrine, or even make out a case of prima facie negligence, because they failed to establish the proper standard of medical care through expert testimony. The court, in either case, never addressed the legal theory asserted by the plaintiff, and referenced, in comment (d) of the Restatement that an expert could testify in medical malpractice cases to raise the level of general knowledge of the jurors from which the jury could then infer negligence.
In addition, not every medical malpractice case demands the testimony of an expert. The plaintiff, in order to meet his burden of proof in a negligence case brought against a medical professional, can dispense with expert testimony "where there is manifest such obvious gross want of care or skill as to afford, of itself, an almost conclusive inference CT Page 14229 [of lack of skill or care] and dispense with the necessity of testimony by expert witnesses" (Citation omitted; internal quotation marks omitted). Chubb v. Holmes, surpa, 111 Conn. 486. Comment (d) of section 328D, as quoted within, provides a good example of this exception when it references a situation where a sponge is left inside a patient's abdomen after an operation. In such a case, the jury, based upon its own common knowledge, could infer that such an event would not normally occur absent the negligence of someone.
A review of the pleadings in this case demonstrates that the plaintiff has recited all the necessary elements of the doctrine of res ipsa loquitur. The pleadings, however, lack any allegation that the allegedly improper administration of the antibiotic evinces an obvious gross want of skill or care on the part of the hospital or its agents. If the court required the plaintiff to plead that the defendants' conduct evinced a gross want of skill or care, the court would be implying that res ipsa loquitur can only be used in medical malpractice cases where no expert testimony is needed. The case law does not mandate this. This appears to be a case of first impression. Viewing the complaint in a light most favorable to the pleader, the court finds that counts eight, nine and ten properly plead an action in res ipsa loquitur, and that the plaintiff need not state the "gross want of skill or care" because it can be (1) reasonably inferred or (2) it is not necessary.
In his brief in support of his motion to strike count ten, Olson raised the additional ground that res ipsa loquitur
is merely a evidentiary tool from which a jury can infer negligence based on circumstantial evidence, and should not be separately plead as a distinct cause of action. The case law suggests that the doctrine of res ipsa loquitur is properly plead as a separate cause of action where the plaintiff intends to rely upon the general cause of the injury without alleging specific acts of negligence. See Doe v. Shop-Rite,
Superior Court, judicial district of New London at New London, Docket No. 521912 (Leuba, J.) See also Rosenblum v. DeerfieldWoods Condominium Ass'n Inc., 6 CSCR 764 (July 11, 1991, Nigro, J.).
In cases where specific acts of negligence are previously alleged, however, the courts have reasoned that "having already alleged a cause of action for negligence in a CT Page 14230 [previous count], [a plaintiff] cannot allege the same action again [in a subsequent count] by merely claiming it is a separate action based on the doctrine of res ipsa loquitur."Estate of Just v. Aparo, 8 CSCR 542 (April 23, 1993, Higgins, J.)
Count ten of the Scace's complaint incorporates by reference paragraph 1 through 11 of the eighth count. Paragraph 1 of count eight incorporates by reference paragraphs 1 through 4 of count 1. Paragraph 7 of count eight also incorporates paragraphs 7 through 10 of count one. When read as a whole, count ten merely alleges that Hartford Hospital, acting through its agents administered 12,000,000 units of penicillin to Scace in an unreasonable quantity causing her to have seizures and other symptoms. While examining Scace, the doctors manipulated a shunt which caused bleeding, and that Scace suffered and later died due to the overdose. The count then alleges that such an overdose of penicillin would not normally occur unless through the negligent act of the person administering the same, and that at the time of the incident "the amount of penicillin to be administered to Holly was under the sole and exclusive control of Doctor Olson, acting either individually or jointly with Doctor Iantosca . . . and the resulting . . . consequences occurred without any voluntary act on the part of Holly Scace" (Count 10, paragraph 12).
Although count one of the complaint does contain references to specific acts of negligence, it is apparent that the plaintiff, in pleading an alternative theory of recovery relying on the doctrine of res ipsa loquitur, was extremely careful to exclude any specific acts of negligence referenced in other counts. Thus, the court finds that the plaintiff has not replead a cause of action in negligence, but has alternatively plead a cause of action based on res ipsa loquitur without any reference to specific negligent acts. Therefore, the court rejects Olson's alternative ground offered in support of striking count ten.
Upon a careful review of the pleadings of this case, the court finds that counts eight, nine, and ten state valid causes of action and should not be stricken.
CONCLUSION
CT Page 14231
For the above stated reasons, the defendants' motion to strike counts eight, nine, and ten of the complaint is denied.
Hurley, J.